STATE OF IOWA, Appellee, v. DELBERT N. BAUER, Appellant.

No. 46760.

NOVEMBER 13, 1945.

Smedal & Maurer, of Ames, J. G. Gamble and A. B. Howland, both of Des Moines, for appellant.

John M. Rankin, Attorney General, and B. M. Soper, County Attorney, for appellee.

OLIVER, J.— Appellant was charged with violating section 5035.15, Code of Iowa, 1939, which makes unlawful the operation of a motor truck on the public highways, "with a gross weight exceeding that for which it is registered by more than five percent of the gross weight for which it is registered, provided, however, that any vehicle or vehicle combination referred to herein, while carrying a load of raw farm prod-

ucts, soil fertilizers, including ground limestone, raw dairy products or livestock, live poultry, eggs, may be operated with a gross weight of twenty-five percent in excess of the gross weight for which it is registered."

The facts were stipulated. Appellant, an employee of a motor truck company, was operating a truck, under an Iowa registration which authorized a gross weight of 38,000 pounds. The actual gross weight of the loaded truck was 41,350 pounds, which exceeded the five per cent tolerance allowed generally by the statute. However, this cargo consisted of frozen eggs in metal cans. The eggs were broken from the shell and the yolks and whites mixed, placed in cans and frozen. No additional substances were added and the entire egg, except the shell, was placed in such can.

In the trial court and upon this appeal the only contention presented by appellant was that his cargo comes within the meaning of the proviso of Code section 5035.15, which permits an excess gross weight of twenty-five per cent for eggs, and hence that it was not an overload. This Code section is found in chapter 251.1 of the 1939 Code, entitled Motor Vehicles and Law of Road. Under said chapter registration fees for trucks, etc., are graduated upward as the authorized gross weight of the vehicle and load increases. Hence vehicles of greater gross weight are required to contribute more toward highway maintenance.

The statute permits a greater tolerance in the gross weight of loads of certain products which usually are moving from farm to market and also of soil fertilizers. Perhaps this is because it is thought vehicles hauling such cargoes make less use of the highways than others, or that with a permitted overweight of only five per cent the inaccessibility of facilities for weighing such cargoes frequently would result in undue hardship to agriculture, or for other reasons.

The common meaning of the word "egg" is defined in Funk & Wagnalls New Standard Dictionary as:

"Specifically, in common usage, the egg of a bird, especially of the domestic fowl, oval, and having a calcareous shell."

In this case the inquiry may be narrowed to the question

whether the proviso in the statute refers to eggs in their original unprocessed form, as above defined, or includes mixtures of the soft parts of eggs. In determining this question the statute should be considered as a whole, the meaning of various words construed in connection with associated language, and particular words given an interpretation in accord with the intent of the legislature as therein expressed. State v. Read, 162 Iowa 572, 577, 144 N. W. 310; State v. Wignall, 150 Iowa 650, 128 N, W. 935, 34 L. R. A., N. S., 507.

The first reference to cargo in the proviso is "a load of raw farm products." The word "raw" is again used in the expression "raw dairy products or livestock." "Live poultry" is next mentioned. Repeated use of the words "raw" and "live" clearly indicates the legislature intended the proviso to apply to such products as originally produced and in their natural unprocessed states only. Moreover, the use of the words "ground limestone" in connection with fertilizers indicates that when the legislature intended to include in the proviso a substance not in its original form such intention was plainly stated.

No reason appears why the word "eggs" should include mixtures of eggs removed from their shells and not in their original state when all other farm products must be live or raw to come within the terms of the proviso. In the absence of language indicating a contrary legislative intent the common meaning of the word "eggs" should not be broadened to include eggs other than in their natural state.

We hold the cans of egg substance in question were not "eggs" within the meaning of the proviso and hence that the vehicle was being operated with an overload. The foregoing reasoning and conclusion accord with the opinion and judgment of the able trial court.—Affirmed.

All JUSTICES concur.